UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CORRIE M. REHMS<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY OF POST FALLS, et. al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-00185-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Defendant River City Animal Hospital PLLC's ("Animal Hospital") Motion for Summary Judgment (Dkt. 59) and Motion to Strike (Dkt. 79) as well as remaining Defendants'[1] Motion for Summary Judgment (Dkt. 63). The Court held oral argument on December 12, 2023, and took all motions under advisement.

Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART Animal Hospital's Motion to Strike, GRANTS Animal Hospital's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

---

[1] Rehms's claims in this case are directed at one business (River City Animal Hospital) and then, collectively, at a large group of related individuals and entities. This large group—consisting of the City of Coeur d' Alene, the City of Post Falls, Coeur d'Alene Chief of Police Lee White, the Coeur d' Alene Police Department, Nick Knoll, Kootenai County, Kootenai County Sheriff Ben Wolfinger, the Kootenai County Sheriff's Department, Post Falls Chief of Police Pat Knight, the Post Falls Police Department, Post Falls Police Officer Christoffer Christensen, Post Falls Police Officer Lauren Pierson, and the Post Falls Prosecutors—will be referred to collectively as "Defendants" while River City Animal Hospital will be referred to as "Animal Hospital."

## II. BACKGROUND

### A. Factual Background

The facts of this case, as set forth in the Complaint, are relatively simple. On June 9, 2020, Corrie Rehms was waiting in her vehicle at a local veterinary clinic—Animal Hospital—to pick up her daughter's dog. At one point, Rehms got out of her vehicle and asked to use the restroom at the facility. An Animal Hospital staff member told her that would not be possible. Both Rehms and the staff member allegedly became impatient with each other. Thereafter, at approximately 5:45 P.M., staff from Animal Hospital called the Post Falls Police Department asking them to perform a welfare check on Rehms. The caller alleged Rehms's pupils were very small and that she was exhibiting odd behavior such as closing her eyes and leaning forward. The caller thought Rehms may have been on some sort of substance and was worried about her ability to drive.

Upon arriving at Animal Hospital, Post Falls Police Officers contacted Rehms. The Officers asked Rehms about the physical conditions she was exhibiting. Rehms explained that she suffers from a traumatic brain injury ("TBI") sustained in a car accident some years prior. The Officers requested Rehms complete various sobriety tests. After performing the tests, the Officers informed Rehms she had failed certain tests and arrested her for driving under the influence. Rehms was placed into the back of a patrol car where she was given a breath test. The results of that test showed no alcohol consumption.

Rehms was then taken to the Kootenai County Jail where a more complete evaluation took place. Upon arrival, a series of tests were performed which also suggested Rehms was under the influence of drugs. A blood sample was drawn.

Rehms was then placed in a jail cell. After repeatedly striking the door, however, she was moved to a secure room with padded walls, an open grate toilet, and no other accommodations out of an abundance of caution that she would hurt herself.

Eventually, Rehms was released from jail. The charges against her were also subsequently dropped when the blood tests revealed no mood-altering substance; only over-the-counter pseudoephedrine (Sudafed). Later, in August of 2020, Rehms had two more interactions with law enforcement where she refused to cooperate given her previous encounter and negative experience with the Animal Hospital incidence.

### B. Procedural Background

After posting a reduced bond in accordance with the Court's order (Dkt. 3), Rehms filed the instant lawsuit on May 10, 2022. Dkt. 5. Rehms brings a claim for libel/slander against Animal Hospital. *Id*. at 23–24. Rehms brings multiple civil rights claims against the remaining Defendants.[2] *Id*. at 11–23.

Animal Hospital previously filed a Motion to Dismiss arguing Rehms failed to state a viable claim of libel or slander. Dkt. 40. Animal Hospital's primary argument was Rehms provided no facts to support her theory that any of its employees made libelous or slanderous statements against her. The Court ultimately agreed, dismissed that claim against Animal Hospital, but allowed Rehms an opportunity to amend. Dkt. 48.

Rehms elected to file an Amended Complaint. Dkt. 49.

---

[2] Specifically, Rehms alleges 42 U.S.C. 1983 claims and claims for illegal seizure, illegal detention, malicious prosecution, outrageous conduct, excessive force, negligent hiring, ADA discrimination, *Monell* liability, and libel/slander. Dkt. 49, at 11–26.

Rehms then motioned the Court to file a Second Amended Complaint to substitute previously-named "Does" with identified individuals. Dkt. 56.

Summary Judgment briefing then commenced. Animal Hospital filed a Motion for Summary Judgment alleging Rehms had not cured the prior deficiencies related to the libel/slander claim and that summary judgment is appropriate in its favor on this single claim. Dkt. 59. Similarly, Defendants filed a Motion for Summary Judgment contending there are no factual disputes that would preclude a finding that the involved officers' and entities' actions did not violate Rehms's rights. Dkt. 63.

The Court then granted Rehms motion to file a Second Amended Complaint over Defendants' objections (Dkt. 71) and the Second Amended Complaint was filed (Dkt. 76). Because this decision issued during summary judgment briefing, the Court gave the parties an opportunity to supplement their existing briefs. Dkt. 71, at 6.

Animal Hospital filed a Motion to Strike Rehms's declaration filed in support of her opposition to Animal Hospital's Motion for Summary Judgment. Dkt. 79.

The Court then extended briefing to accommodate Counsel (Dkts. 77, 83) and set the motions for a hearing (Dkt. 92).

The parties filed their supplemental briefs (Dkts. 87, 89) and the Court held a hearing (Dkt. 93).

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). Importantly, the Court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

### A. Animal Hospital's Motion for Summary Judgment (Dkt. 59) and Motion to Strike (Dkt. 79)

#### 1. Motion to Strike

The Court will begin by addressing Animal Hospital's Motion to Strike as the

evidence at issue there bears on the Motion for Summary Judgment.

In its Motion for Summary Judgment, Animal Hospital alleges the statements Rehms thinks are defamatory were either: (1) true, (2) opinion statements, and/or (3) never actually said. As part of her response, Rehms filed a declaration refuting those arguments. Dkt. 66-1. Many of her statements in this declaration serve as the basis for her opposition to summary judgment. Specifically, within this declaration are three statements Animal Hospital now wishes to strike. The Court will address each in turn.

a. Animal Hospital Should Have Known of Rehms's Disabilities

In her declaration, Rehms claims that she has been a client of Animal Hospital for over 15 years. Additionally, she avers that in the years *following* her traumatic brain injury, she had been to the clinic on two occasions and spoke with staff on the phone on two other occasions. Based upon these interactions, she claims Animal Hospital was "well aware of [her] disabilities." Dkt. 66-1, at 6.

Animal Hospital argues Rehms has no personal knowledge of this fact. The Court agrees.[3] Pursuant to Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [] declarant is competent to testify on the matters stated." Rehms has not provided any evidence that would indicate Animal Hospital (either collectively or as applied to any individual staff member) *knew* she had suffered a

---

[3] Rehms did not address this argument in her response to Animal Hospital's Motion to Strike.

traumatic brain injury.[4] Rehms does not even explain whether the staff members she interacted with on prior occasions were the same or different individuals who interacted with her on the day in question. This statement is stricken for lack of personal knowledge.

b.  The Police had Never Been Called Before

In conjunction with the above, Rehms claims that on the two occasions she visited Animal Hospital after her accident (but before the visit giving rise to the instant lawsuit) the "police were never called . . . even though I exhibited pin point eyes (miosis), slurred speech, leaning forward and closing my eyes, and obtuse and curt behavior." Dkt. 66-1, at 6–7.

While this statement *likely* seems true—because there is no record evidence that police *interacted* with Rehms on the two prior occasions—she cannot actually say whether police were called because she does not have personal knowledge of that fact. *See* Fed. R. Civ. P.  56(c)(4). This statement too must be stricken.

c.  Argument With Staff Member about Restroom

Finally, Rehms claims that the Animal Hospital staff member who did not allow her to use the restroom was "discourteous, rude and hurtful." Dkt. 66-1, at 7. Animal Hospital wants this statement stricken because it is conclusory, and the context of the statements is unknown.

The Court will not strike this statement because it is simply Rehms's opinion.

---

[4] In fact, the caller *mis-identified* Rehms, believing her to be another patron. Dkt. 64, Exhibit A. This further illustrates that Animal Hospital did not know Rehms well enough to identify her, let alone to know her personal medical history.

MEMORANDUM DECISION AND ORDER - 7

d.  Discovery Rules

Animal Hospital's final argument is that the Court should exclude these statements outright because they were not disclosed in discovery as requested. Animal Hospital contends it sent interrogatories to Rehms requesting information on these topics and the requests went unanswered. Rehms response is that Animal Hospital should have asked for a discovery conference or filed a motion to compel. Not so.

Federal Rule of Civil Procedure 33(b)(1)(A) states that interrogatories "must be answered by the party to whom they are directed." Rehms had a duty to respond and apprise Animal Hospital of the evidence and statements she intended to rely upon to support her cause of action. She cannot bring them up now, at summary judgment, when she failed to disclose them previously. Again, because the Court finds there are independent reasons to strike (or not strike) the three challenged statements, it need not affirmatively decide whether, and to what extent, these statements were raised (or not raised) during the discovery process. But it will simply remind all parties to comply with all applicable rules to ensure fairness in litigation.

In sum, the Court GRANTS in PART and DENIES in PART Animal Hospital's Motion to Strike as outlined above.

2.  *Motion for Summary Judgment*

As noted, Animal Hospital previously motioned the Court to dismiss Rehms's claim because it lacked sufficient evidentiary support. Dkt. 40. The Court did so. Dkt. 48, at 10. But it granted Rehms an opportunity to amend to list the "who, what, where, when, why, and how of the incident" to better apprise Animal Hospital of the facts giving rise to this

specific claim. *Id*.

Animal Hospital contends Rehms failed to do what the Court asked. For the reasons outlined below, the Court agrees.

In her Amended Complaint, and as the basis for her libel/slander cause of action, Rehms asserts that Animal Hospital "knew or should have known" about her condition, that the caller told the 911 operator that she "should not be driving because 'she is on some kind of substance,'" that her "pupils [were] very small," that she was slurring her words, that she had trouble staying awake, that she "kept closing her eyes and leaning forward," and that, but for these comments, she would not have been taking into custody. Dkt. 49, at 25.

"Defamation is the communication of false information which tends to impugn the honesty, integrity, virtue or reputation of the person or entity about whom the statement is made, or exposes that person or entity to public hatred, contempt or ridicule." Idaho Civil Jury Instruction 4.80. *See also* Defamatory, Black's Law Dictionary 506 (10th ed. 2014) (A defamatory statement is one that "tend[s] to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business"). "Libel is a form of defamation. Libel is the communication of defamatory information by written words, or by some form that has the characteristics of written words. Slander is a form of defamation by any other means." Idaho Civil Jury Instruction 4.80. S*ee also Gough v. Trib.-Journal Co*., 249 P.2d 192 (Idaho 1952); Restatement (Second) of Torts, § 568(1)-(2).

In a defamation action, a plaintiff must prove that the defendant: (1) communicated

information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication. *See Clark v. The Spokesman-Rev.*, 163 P.3d 216, 219 (Idaho 2007) (citing *Gough*, 249 P.2d at 194).

The determination of whether a statement is libelous or slanderous is generally a question of law for the court. *Bistline v. Eberle*, 401 P.2d 555, 558 (Idaho 1965). The words in the statement are to be given their "common and usually accepted meaning" and should be read and interpreted as they would be "read and interpreted by the persons to whom they were published." *Gough v. Trib.-Journal. Co.,* 275 P.2d 663, 666 (Idaho 1954).

The fact that a statement is true, or accurately quoted, is an absolute defense to a defamation action. *Van Buskirk v. CNN*, 284 F.3d 977, 981 (9th Cir. 2002). That said, "it is not necessary for the defendant to prove the *literal* truth of his statement in every detail, rather it is sufficient for a complete defense if the substance or gist of the slanderous or libelous statement is true." *Baker v. Burlington Northern, Inc.*, 587 P.2d 829, 831 (Idaho 1978) (emphasis added).

The problem for Rehms is she admits that the statements Animal Hospital made about her to police are largely true. And to the extent any statements were "embellished,"— as Rehms asserts—there is no admissible evidence that her reputation suffered as a direct result of those statements.

Animal Hospital called 911 out of concern. The staff member communicated observations about Rehms regarding her mannerisms, physical demeanor, and behavior. These concerns were related to Rehms having small pupils and that she was closing her eyes and swaying. The caller also opined that Rehms might have been on some type of

substance and should not be driving.

Rehms has admitted she was born with pinpoint eyes and has slurred speech[5] as a result of her TBI. Dkt. 62-1, at 7. Thus, any statements related to those physical characteristics are true and cannot serve as the basis for a defamation claim. The staff member's comments that Rehms was acting odd, shouldn't be driving, and might be on some type of substance[6] are simple opinion statements, based upon personal observations at the time. But there is no indication that the caller made any of those statements to law enforcement to impugn Rehms's character or reputation.[7] And critically, there is no evidence in the record that her reputation actually suffered any harm as a result of these statements.[8] By all accounts, Animal Hospital was simply trying to help. *See, e.g.,* Dkt. 64, Exhibit A (caller stating "we [] just want to make sure she's okay").

---

[5] Rehms also alleges that the caller said her speech was slurred. The recording of the call, however, makes clear that no such statement was ever made. Dkt. 64, Exhibit A. Regardless, Rehms admits she has slurred speech because of her TBI.

[6] This statement is also technically true as later testing would confirm Rehms *was* on a substance—albeit not an illicit substance (Sudafed).

[7] Animal Hospital also argues it enjoys a qualified judicial privilege against any defamation claim because the statements at issue were made to law enforcement. Recent caselaw from the Idaho Supreme Court supports this argument. In *Berian v. Berberian*, the Idaho Supreme Court held that "statements made by private individuals to law enforcement officials prior to the institution of criminal charges are entitled to a qualified privilege . . . and this qualified privilege will not apply when the defamatory statements are made with malice." 483 P.3d 937, 948 (Idaho 2020). It is undisputed that the allegedly defamatory statements at issue here were made *prior* to any prosecution. What's more, nothing in Rehms's Complaint alleges or implies malice by Animal Hospital. And, as will be explained in the following paragraph, besides her own self-serving opinion, Rehms has not put forth any actual evidence to rebuff Animal Hospital's arguments. In sum, the Court finds the qualified privilege applies under the circumstances. This is another independent reason summary judgment is appropriate in Animal Hospital's favor.

[8] At oral argument, and for the first time, Rehms's attorney mentioned that he was under the impression Rehms's had lost her job because of these events. There is no information in the record indicating Rehms lost her job, let alone *why* she lost her job. This fact—if even true—cannot be considered.

In response, Rehms does not put forth any information that credibly calls into question Animal Hospital's reasoning. She provided a self-serving affidavit that contains unverified statements which the Court has now (for the most part) struck. She also has provided self-serving statements in briefing that she: (1) "maintains that Animal Hospital acted with malice in making false statements;" (2) "disputes [] the defendant's statements were truthful and contends that the statements made during the welfare check were false and defamatory;" and (3) disputes that the "gist of the statements made by Animal Hospital during the welfare check [were] true and asserts that the defendant embellished the statements to a substantial degree . . . ." Dkt. 66, at 5, 7, 8.[9] But Rehms cannot manufacture a disputed fact to avoid summary judgment based upon her opinion alone. She must put forth something to rebut Animal Hospital's allegations. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (holding that the "mere existence of some *alleged* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment") (emphasis added).

In this case, the Court finds there are no material facts in dispute. Animal Hospital did not defame Rehms when the employee called 911 and conveyed: (1) truthful statements about her demeanor and behavior, and (2) observations and interpretations from that behavior. What's more, even if it could be said Animal Hospital exaggerated the situation—which the Court is not saying it did—there is no evidence that they acted with

---

[9] Rehms's response brief consists largely of sections reciting the applicable law and then conclusory statements—such as those quoted—that she disagrees with Animal Hospital's position. But she provides no facts or evidence to support her disagreement.

malice or in an effort to harm Rehm's and/or her reputation. Finally, and most importantly, there is no evidence that any harm actually occurred as a result of any statements made by Animal Hospital or its employees.

Due to Rehms's "complete failure of proof" on each of the essential elements of her libel/slander claim, the same fails as a matter of law. *Celotex*, 477 U.S. at 323. Animal Hospital's Motion for Summary Judgment (Dkt. 60) is GRANTED.[10]

## B. Defendants' Motion for Summary Judgment (Dkt. 63)

A few more facts are helpful for context before the Court addresses the next Motion for Summary Judgment.

Once police arrived on scene at the Animal Hospital, they began to work with Rehms to ascertain what was going on. Post Falls Police Officer Christoffer Christensen arrived first on scene and contacted Rehms who was sitting in her running vehicle. Post Falls Police Officer Lauren Pierson arrived shortly thereafter.

Officer Christensen asked Rehms a few initial questions and informed her that she had, among other things, pinpoint pupils. Rehms stated her eyes were pinpointed because she needed to use the restroom and because of her TBI. Upon further questioning, Officers asked Rehms to undergo a battery of field sobriety tests. During the testing, Officer Christensen observed that Rehms was unsteady on her feet, swayed, had slurred speech, and could not complete simple tests of coordination. Based upon Rehms's condition,

---

[10] Animal Hospital asks for fees and costs alleging Rehms pursued this claim frivolously and without any basis in fact. The Court agrees Rehms claim is very thin. But it will not award fees and costs because it is not clear this claim was completely frivolous.

Officer Christensen determined he had probable cause to believe she was under the influence of drugs or some other intoxicant, placed her under arrest, and transported her to the Kootenai County Jail.

While at the Kootenai County Jail, Rehms underwent a second evaluation by Coeur d'Alene Police Officer Nicholas Knoll, a qualified Drug Recognition Expert. Based upon his training, experience, and assessment of Rehms, Officer Knoll eventually determined she was under the influence of drugs, most likely a "CNS depressant." Dkt. 63-1, at 3. Rehms's blood was drawn, and she was placed in an ordinary jail cell.

Unfortunately, however, Rehms began repeatedly striking the door of that jail cell, and—concerned that she would injure herself—Officers moved her to a "safety cell," i.e. a room with rubber padded walls, an open grate toilet and nothing else present. Once calm, Rehms was released from custody.

The citation issued to Rehms were reviewed by Francis P. Kiernan, a City of Post Falls Deputy Prosecuting Attorney. Kiernan determined that probable cause supported the issuance of the citation and opted to proceed with the prosecution. In addition, by an Order dated June 10, 2020, a Magistrate Judge found probable cause to support the charge as well.

After confirmatory testing on the blood sample collected from Rehms revealed the presence of over-the-counter medications but no evidence of illegal drugs, Kiernan determined that the interests of justice no longer favored prosecution and dismissed the charge.

In August of 2020, two months after the DUI charge, Rehms was involved in two

other incidents while she was driving a vehicle and law enforcement were asked to respond. On August 7, 2020, officers responded to an accident where Rehms claimed she was sideswiped by another vehicle. And on August 21, 2020, officers responded to a report of a single vehicle accident, where it was eventually determined that Rehms had caused significant damage to her own vehicle after driving over a curb with children in her car.

As previously noted, Rehms brings a litany of claims against the group of individuals and entities involved in these events.

Like her response to the Animal Hospital's Motion for Summary Judgment, Rehms does little here to respond to Defendants' claims. Her brief is comprised of legal standards followed by conclusory statements that she disagrees with Defendant's recitation and interpretation of the facts, that her disagreement creates a dispute of material fact, and that summary judgment is not appropriate. But this is not the standard. A party cannot simply say they oppose the motion and hope that creates a dispute sufficient to survive. *See Endy v. County of Los Angeles*, 975 F. 3d 757, 764 (9th Cir. 2020) ("The party opposing the motion may not rest upon the mere allegations or denials of his pleading") (cleaned up).

The Court will address Rehms's claims in turn and why summary judgment is appropriate on each claim.

### 1. Civil Rights Claims

Many of Rehms's causes of action fall under 42 U.S.C. § 1983. These civil rights claims rise and fall on whether there was probable cause leading to Rehms's arrest because it is undisputed that the existence of probable cause bars Fourth Amendment claims. *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009).

MEMORANDUM DECISION AND ORDER - 15

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. Whether applied to a search, seizure of property, or arrest, the "touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). Fourth Amendment reasonableness "is predominantly an objective inquiry," which generally questions whether "the circumstances, viewed objectively, justify the challenged action." *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011) (cleaned up)

Here, Rehms does not dispute conditions were present that gave officers reasonable concern for her well-being. She readily admits she had pinpoint eyes, slurred speech, shaky balance, and could not complete all tests as requested.[11] She takes issue, however, with the fact that Officers did not believe her *explanations* for her conditions. She claims she told them repeatedly of her TBI and even had family members confirm that she is a law-abiding citizen, that she had a TBI, that she did not drink or use illicit drugs, and that she had taken some over-the-counter medications prior to driving. She even offered to let her daughter drive her home so that she wouldn't have to drive herself.

The Court appreciates that Rehms is an upstanding citizen and lives a clean, drug-free life. It also appreciates that she tried to explain her situation to Officers during a stressful time. However, hopefully Rehms can appreciate that Officers may have trouble taking a person at her word when the individual is being questioned in relation to criminal activity and is exhibiting symptoms consistent with being under the influence of drugs or

---

[11] For example, Rehms could not place her finger on the tip of her nose, and she confusingly claimed to be waiting for her dog to be brought out to her when, in fact, the dog was already in her vehicle.

alcohol.[12] Rehms does not provide the Court with any case law suggesting probable cause evaporates in the face of a self-serving (albeit truthful) explanation of the situation.

In this case, Officers suspected Rehms was under the influence of some type of substance. As a reminder, while "DUI" usually invokes the thought of alcohol or illicit drugs, the crime at issue encompasses "any other intoxicating substances." Idaho Code § 18-8004(1)(a). As it turns out, Rehms was "under the influence" of Sudafed. Use of that drug could explain some of her symptoms. Other symptoms may stem from her TBI. But to overcome the probable cause barrier, Rehms must show not simply that she had a valid explanation for her symptoms, but that a reasonable officer in the position of the Post Falls Officers *would not* have thought there was a "fair probability" that she had violated the law. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). *See also United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (explaining probable cause is not a high bar: it "exists when there is a fair probability or substantial chance of criminal activity").[13]

---

[12] In like manner, Rehms should be able to appreciate the fact that family members of individuals suspected of criminal activity may lie to law enforcement to help their family member. The Court is not implying that occurred here; simply that law enforcement would likely be wary of statements made by those close to a suspect that aid the suspect.

[13] Neither party discussed—in briefing or at oral argument—whether the question regarding probable cause was for the Court or a jury to decide. The Ninth Circuit has long held that, in the context of civil cases, "the existence of probable cause is a question for the jury." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). That said, "when there is no genuine issue of fact, summary judgment is appropriate if no reasonable jury could find an absence of probable cause under the facts." *Id*. In this case there is no dispute as to the material facts—after all, the entire encounter is recorded on video. To be sure, Rehms avers that her behavior did not provide probable cause for any arrest. However, as explained, she has nothing to support this notion other than her own opinion. Based upon the facts in evidence—that Rehms was acting consistent with a person possibly under the influence *and* that she failed multiple field sobriety tests—no reasonable juror could conclude officers lacked probable cause to arrest Rehms. In short, the Court can make this determination at this stage of the case without a jury. *See Ornelas v. United States*, 517 U.S. 690, 696–97 (1996) (explaining that once the facts are established, the Court's duty is to determine "whether the facts

Based upon all the evidence in the record, there is no dispute that Officers had probable cause to arrest Rehms. She was exhibiting symptoms consistent with being under the influence and she failed multiple sobriety tests.[14] The Officers logical conclusion that Rehms was under the influence was sufficient to sustain her arrest.[15] Because the Court finds Officers had probable cause to arrest Rehms, her claims for false arrest, false imprisonment, and malicious prosecution fail. Summary judgment is appropriate on these claims.

### 2. Due Process Claim

Rehms also alleges that Officers Christensen, Pierson, and Knoll violated her "4th, 5th, 8th and 14th Amendment Rights to Due Process by making false allegations that she was driving under the influence of drugs when she suffered from a disabling traumatic brain injury." Dkt. 49, at 15. As the Court has noted elsewhere, simply making a false allegation does not normally support a Due Process claim because such a claim requires a showing of the deprivation of life, liberty, or property without due process of law. *See Collinson v. Rose*, 2022 WL 3139123, at *4 (D. Idaho Aug. 4, 2022). Regardless, Rehms's due process claim, even if properly alleged, fails as a matter of law because, as explained

---

[14] The Court would also note this was not a situation where Officers showed up, ran a few quick tests, and took the person to jail immediately. Officers in this case interacted with Rehms for *over one hour* before taking her to jail. They heard her explanation, talked to her family, called supervisors for advice about what to do, and ran multiple tests multiple times before reaching their conclusion.

[15] Additionally, even if it could be said the Officers did not have probable cause, qualified immunity bars claims against officers who act with a reasonable, but mistaken belief that they had probable cause. *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011). Again, there is nothing in the record to suggest the Officers' actions were unreasonable.

satisfy the relevant statutory or constitutional standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated") (cleaned up).

above, probable cause *did* exist for her arrest and detention. Summary judgment is appropriate here.

### 3. *Malicious Prosecution Claim*

Rehms's fourth claim in her Amended Complaint is for Malicious Prosecution against Officers Christensen, Pierson, and Knoll, as well as their employers and the "Post Falls Prosecutors."[16]

"To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must show that the defendant prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Carswell v. Anderson*, 2023 WL 2354830, at *2 (D. Idaho Mar. 3, 2023) (cleaned up).

As already noted, as it relates to Officers Christensen, Pierson, and Knoll, because there was probable cause to arrest Rehms, her malicious prosecution claim fails at the outset. *Lassiter*, 556 F.3d at 1054–55 ("probable cause is an absolute defense to malicious prosecution.").

As for her claim against the prosecuting attorney who handled her criminal case, he has prosecutorial immunity. This immunity is absolute and applies to charging decisions and other actions taken "in the performance of an integral part of the criminal judicial process." *See Longee v. Holloway*, 2019 WL 6702418, *4 (D. Idaho December 9, 2019) (*citing Imbler v. Pachtman*, 424 U.S. 409, 410, 430 (1976)). Summary judgment is granted

---

[16] Rehms has stated a claim against "Post Falls Prosecutors" but has never identified a prosecutor by name.

on this claim as well.

### 4.  *Excessive Force*

Rehms next alleges that Officer Christensen used excessive force against her during the initial encounter and that Kootenai County Jail deputies used excessive force to restrain her at the jail.

Under the Fourth Amendment, law enforcement officers may use such force as is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986).

As a threshold matter, Defendants claim Rehms must have medical documentation showing an actual injury to bring this type of claim. Rehms disagrees. While medical records would, assuredly, provide good support for an excessive force claim, the Court finds the absence of formal medical records in and of itself does not doom this cause of action. That said, Rehms has not submitted anything to show what injuries, if any, she suffered as a result of Defendants' actions. She simply claims that officers were rough with her when she was not resisting or trying to flee during the original encounter and were again rough with her when she was not being difficult at the jail.

Again, while the Court is not necessarily looking for official medical records, it needs something. Rehms has not stated, shown, documented, or claimed any *specific* physical injury. Rehms has merely stated that Officers were too rough with her. But as noted multiple times now, her statements alone cannot create a material fact precluding summary judgment. The evidence in the record shows that officers used only the amount of force necessary to accomplish their goals and that amount was objectively reasonable

MEMORANDUM DECISION AND ORDER - 20

under the circumstances. *See Graham*, 490 U.S. at 397. Rehms has not provided any evidence to dispute that. Summary judgment must be granted.

### 5. *Monell and Supervisory Liability*

In her Amended Complaint, Rehms alleges that Defendants—at least the organizational Defendants—failed to properly train and supervise their Officers and employees and these failures result in *Monell* liability.[17] Dkt. 49, at 23.

To begin, because there is no private right of action for vicarious liability under 42 U.S.C. § 1983, in order to establish municipal liability, Rehms must prove that "… (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino County, Dept. of Soc. Serv.*, 237 F. 3d 1101, 1110–11 (9th Cir. 2001) (cleaned up).

Again, however, because the Court has already determined there was probable cause for her arrest and detention, these supervisory claims fail as a matter of law. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining there can be no claims "against a municipal corporation based on the actions of one of its officers when [it is determined] the officer inflicted no constitutional harm"); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) ("because Plaintiffs have failed to establish any triable issue of fact as to any of their constitutional claims, a supervisory claim against [a supervisory official] is not sustainable.").

---

[17] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

No constitutional violation can be shown here. Based on the objective (and only) evidence before the Court, Rehms's arrest was supported by probable cause (as was the citation issued to her) and excessive force was not used by any Defendant. By all accounts, the individual officers all followed standard procedures in this instance.

Additionally, to the extent that a constitutional violation could be shown, Rehms would still not prevail because she has not shown that any of the municipal defendants had policies that required their officers to do what she alleges happened here: harass or mistreat suspects. Nor has she offered any evidence showing a pattern of similar violations, or that might otherwise support a failure to train theory of liability. In this case, all the available evidence shows that Defendants followed standard DUI investigatory policies and procedures.

Relatedly, Rehms has alleged claims for negligent hiring, training, and supervision. Dkt. 49, at 19–20.

To the extent these claims are brought against the organizational Defendants, they are barred by the Idaho Tort Claims Act ("ITCA") and must be dismissed. *See Torres v. Sugar-Salem School Dist. # 322*., 2019 WL 4784598, *24 (D. Idaho Sept. 30, 2019) (negligent supervision claims against government entities are barred by Idaho Code Section 6-904(3) "even if their employees committed the tort with malice or criminal intent") (cleaned up).[18]

---

[18] In like manner, to the extent any of the aforementioned claims are brought pursuant to Idaho state law, they are barred by the ITCA and relevant statutory code. Idaho Code Section 6-904(3) bars all claims against governmental actors and entities for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" unless they acted with malice or criminal intent. *See Hoffer v. City of Boise*, 257 P.3d 1226, 1228 (Idaho

To the extent this claim is brought against any individual officer, as stated above, there is no evidence in the record to support the idea that there is a pattern or practice in these agencies (or with these officers) that required them to harass or mistreat criminal suspects. Nor is there any evidence in the record showing that any of the Officers who Rehms interacted with had a history of complaints or disciplinary actions against them for similar incidents.

Summary judgment is granted as to all *Monell* claims—and related supervisor claims.

### 6.  *ADA and Rehabilitation Act Claims*

Rehms next asserts that Defendants' actions amounted to discrimination under the Americans with Disabilities Act and/or the Rehabilitation Act. Dkt. 49, at 22–23.

To begin, the Ninth Circuit has held that the ADA applies to arrests: (1) where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity, or (2) where a reasonable accommodation is refused in the course of investigation or arrest. *See Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).

The facts at issue here show, among other things, that Rehms was nodding off in a running vehicle, was disoriented, had pinpoint pupils, and admitted to taking medications that could cause a person to be drowsy and/or impaired. These factors alone, none of which are related to a disability, could have established the probable cause that she was operating

---

2011).; *see also Greenfield v. City of Post Falls*, 2014 WL 1343478, *13 (D. Idaho April 3, 2014). There is no evidence here any Defendant acted with malice or criminal intent; thus, all related state claims fail.

a vehicle while impaired in violation of Idaho Code. Even when Rehms explained that *some* of her symptoms were the result of a TBI, that does not negate the fact that she could have been improperly operating a vehicle. *See, e.g., Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) ("While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.").

As for Rehms's claim that Defendants failed to make appropriate accommodations, the evidence shows the opposite. Officers Christenson and Pierson, for example, specifically did not require Rehms to perform certain components of the field sobriety test (like standing on one leg) after she claimed she would be unable to do so due to her TBI.

Likewise, Officers at the jail did not fail to accommodate Rehms's claimed disability. To be sure, after repeated beating on the cell door and walls, Rehms *was* moved to a different cell for her own safety, but none of that had to do with her disability (i.e. her TBI). Those measures were taken because she was being belligerent, and Defendants were concerned she would hurt herself.

There is no ADA or Rehabilitation Act violation here and summary judgment is appropriate on these claims.

### 7.  *Libel/Slander*

Finally, Rehms claims Defendants made false statements about her to each other (about her being under the influence) and that those statements were defamatory.

First, as noted above, Idaho Code Section 6-904(3) bars these claims.

Second, statements made during the course of an investigation—i.e. when officers

are actively attempting to sift fact from fiction and truth from falsity—are privileged, and generally cannot give rise to actionable claims for defamation under Idaho law. *See Berian*, 483 P.3d at 946 ("The purpose of [this] privilege is 'to keep the paths leading to the ascertainment of truth as free and unobstructed as possible.'") (cleaned up). Put simply, officers communicating about possible criminal behavior in the normal course and scope of their employment cannot serve as the basis for a defamation claim.

Third, as with her defamation claims against Animal Hospital, Rehms wholly fails to establish that her reputation actually suffered because of any statement made by the involved officers.

Rehms's defamation claim against these Defendants fails and summary judgment is appropriate.

## V. CONCLUSION

Rehms's claims are not supported by the facts and evidence. She clearly disagrees with how things transpired, but she cannot point to anything supporting a finding of defamation as to the Animal Hospital. Nor can she point to any facts that would defeat Defendants' evidence that they followed all appropriate practices and procedures, had probable cause to arrest her, and did not violate her civil rights in any way. She needs more than her own disagreement with how things transpired to defeat properly supported motions for summary judgment. There are no factual disputes on these points.

For these reasons, summary judgment as to Animal Hospital and all Defendants on all claims is appropriate.

## VI. ORDER

The Court HEREBY ORDERS:

1. Animal Hospital's Motion to Strike (Dkt. 79) is GRANTED in PART and DENIED in PART as outlined above.

2. Animal Hospital's Motion for Summary Judgment (Dkt. 59) is GRANTED.

3. Defendants' Motion for Summary Judgment (Dkt. 63) is GRANTED.

4. The Court will enter judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: January 25, 2024

David C. Nye
Chief U.S. District Court Judge